# W. NICHOLAS WILLIAMS, ADMINISTRATOR, *vs.* S. KATHERINE ADDISON.

*Power of Orphans' Court to Appoint a Stranger to Decedent Administrator of His Estate When Collateral Next of Kin do not Apply for Letters—Time Within Which Administration May be Granted—When Notice to Persons Interested is Necessary—Right of Next of Kin not a Distributee to Administer—Appeal from Order Revoking Grant of Letters.*

A man died intestate, leaving as his only relations a sister and her daughter, his niece. The sister renounced her right to administer and appellant, a stranger to the decedent, was thereupon appointed by the Orphans' Court administrator, without any notice to, or application by, the niece. Subsequently, upon a petition filed by her, the appellant's appointment was revoked upon the ground that he had been prematurely and irregularly appointed. Under Code, Art. 93, secs. 22, 23, the niece under the above mentioned circumstances, was entitled as next of kin to administer, provided she applied for letters, but under sec. 33, since she was a collateral relation, more remote than brother or sister of the intestate, it was not necessary to notify her before appointing an administrator. *Held,* that the Orphans' Court had the power to appoint a stranger as administrator, at its discretion, without notice to the niece, because under sec. 31 of Art. 93 of the Code, if relations of the decedent not more remote than brother or sister, decline, or refuse to appear on notice, or if other relations or creditors neglect to apply, then administration may be granted at the discretion of the Court.

Code, Art. 93, sec. 14, provides that upon the death of a person intestate, letters of administration upon his estate may forthwith be granted by the Orphans' Court. Under section 16, unless such dying intestate be

notorious or proved to the satisfaction of the Court, no administration shall be granted until at least twenty days after the death of the supposed intestate, and at least seven days after application therefor. *Held*, that these two sections are not in conflict ; that under section 14, administration may be immediately granted whenever there is actual ascertained intestacy, and the provision as to twenty days in section 16, is confined to cases where the intestacy is not notorious, or has not been proved to the satisfaction of the Court.

Upon the death of a man leaving as his only next of kin a sister and her daughter, and the sister renounces the right to administer on his estate, the decedent's niece is entitled, under Code, Art. 93, to administer if she applies for letters within due time, and the fact that she has no interest in the estate so long as her mother lives, does not disqualify her.

An appeal lies by an administrator from an order of the Orphans' Court revoking his letters of administration, and when this has been done on the ground that he was prematurely appointed, no testimony need be incorporated in the record.

Appeal from the Orphans' Court of Dorchester County.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John R. Pattison* and *Frederick H. Fletcher* for the appellant.

*Thomas W. Simmons* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This appeal comes up from the Orphans' Court of Dorchester County.   It presents for review an order of that Court revoking letters of administration which had been previously granted by it.   On the eighth day of September, nineteen hundred, Albert N. P. Edmondson died intestate.   There was no dispute as to his having died intestate, and there was no controversy as to his having been a resident of Dorchester County at the time of his decease.  He left surviving him neither widow, child, grandchild, father, mother nor brother ; but he did leave a sister, Mrs. Catharine J. Wyatt, and a niece, Mrs. Addison, who is the daughter of Mrs. Wyatt.   On the eleventh day of September, Mrs. Wyatt renounced her right to administer on the estate of her deceased brother, and on the

same day, without the knowledge of the niece and without notice having been given to her of the renunciation by her mother, the Orphans' Court granted letters of administration on the estate of Edmondson to one W. Nicholas Williams, who was in no way related by blood or connected by affinity, to the decedent.   On the eighteenth day of September, Mrs. Addison, the niece, filed in her own name, though a married woman, a petition in the Orphans' Court, alleging that the order of the eleventh by which Mr. Williams was appointed administrator, had been improvidently, prematurely and improperly passed, and praying that it be rescinded and revoked and that letters be committed to her, her husband to be joined with her as co-administrator.   To this petition the administrator, Mr. Williams, filed an answer.   Some allegations of fact which the petition contained were admitted by the answer, others were neither admitted nor denied.   The administrator contended that Mrs. Addison was not entitled to have his letters revoked nor to have letters issued to her, because *first*, she is not the next of kin of the decedent ;  *secondly*, because her mother is still alive ;  *thirdly*, because she has no interest in the estate ;  and *fourthly*, because she did not actually apply for letters of administration before the letters committed to Mr. Williams had been granted.   Testimony was adduced before the Orphans' Court, but was not reduced to writing and is not in the record.   Subsequently the Court passed an order revoking the letters previously granted to Mr. Williams, and revoking them solely because they had been, in the opinion of the Court, prematurely, improvidently and irregularly granted. From that order Mr. Williams entered the pending appeal.

A motion to dismiss the appeal has been filed, but we will defer its consideration until after we have disposed of the contention respecting the merits.

Very careful and elaborate provisions have been made by the Legislature and are contained in the Code, to secure the prompt and efficient administration of decedent's estates.   Little is left to the discretion of the Orphans' Court in respect to the appointment of administrators.   By *sec. 14, Art. 93 of the Code*, it is

declared that *whenever* any person shall die intestate leaving in this State personal property, letters of administration may *forthwith* be granted by the Orphans' Court; while *sec. 16* of the same article, provides that it shall be incumbent on the person applying for administration to prove such dying intestate to the satisfaction of the Court unless the same be notorious; and if such dying intestate be not proved to the satisfaction of the Court no administration shall be granted. The section then proceeds: "No such administration shall be granted until at least twenty days after the death of the *supposed* intestate, and at least seven days after application therefor." These two provisions of the Code are not in conflict, though the contention of the appellee, if sustained, would make them so. The prematurity, improvidence and irregularity complained·of consisted primarily and exclusively in the disregard by the Orphans' Court of the clause just quoted from section sixteen. The application of Mr. Williams for letters of administration was made to, and the letters were granted by the Orphans' Court within five days after the decedent's death. The failure to suspend action on this application for twenty days is the ultimate ground upon which a rescission of the letters was sought.

The policy of the law that there should be a prompt administration of the estate is declared in the fourteenth section which directs letters of administration to be *forthwith* granted *whenever* any person shall die *intestate* owning personal property in this State. It was obviously not the purpose of the sixteenth section to construe the word "forthwith" as used in the fourteenth section, to mean not earlier than twenty days after the death of the intestate, for the fourteenth section and the sixteenth section were both taken from the *Act of 1798, ch. 101*, and must, therefore, be made to harmonize as integral parts of a consistent system. If the general policy pervading this legislation, as disclosed in *sec. 14*, looks to an immediate grant of administration *whenever* there is an *actual, ascertained* intestacy, the prohibition with respect to the twenty days, as contained in the subsequent or sixteenth section, must be con-

fined to cases of *"supposed"* intestacy—that is to cases where
the intestacy is not notorious or has not been proved to the
satisfaction of the Orphans' Court; because the language of
the *16th sec.* is that "no *such* administration," that is no admin-
tration where the intestacy is not notorious or is not proved to
the satisfaction of the Orphans' Court "shall be granted until
at least twenty days after the death of the *supposed* intestate"—
not twenty days after the death of the person definitely *known*
to have died intestate.   The limitation imposed by *sec. 16* on
the authority of the Orphans' Court to grant administration
*forthwith* upon a dying intestate is obviously, therefore, con-
fined to the instances named in that section; viz, where the
intestacy is not notorious or is not proved to the satisfaction
of the Orphans' Court.   If this be so—and there is no other
rendition of the language which will prevent a clashing of the
sections—then there was nothing premature or improvident in
the action of the Orphans' Court in making the appointment
of an administrator before the expiration of twenty days from
the date of Mr. Edmondson's death, because it was a case of
*known* and not *supposed* intestacy; and the granting of the
letters to Mr. Williams is not open to impeachment if the or-
der was in other respects regular and proper.

But the contention is that when Mrs. Wyatt renounced her
right to administer Mrs. Addison, her daughter, became enti-
tled, and being then entitled she ought to have been notified
or given an opportunity to apply for letters before a stranger
was selected.   By *secs. 18 to 31* inclusive, *Art. 93* of the Code
the various persons entitled to administer and the order of
their respective priorities are minutely set forth.   It is unneces-
sary to state these several provisions.   *Sec. 22* declares that
if there be neither widow, nor child, nor grand-child, nor
father, nor brother, nor sister, nor mother, the next of kin
shall be preferred.   When the sister of the decedent re-
nounced, the next of kin became entitled, because the renun-
ciation produced precisely the situation which would have ex-
isted had Mrs. Wyatt been dead.   The next of kin was the
niece, Mrs. Addison.   The fact that she had no interest in the

estate so long as her mother lived did not disqualify her. *Mc-Colgan, Admr.*, v. *Kenny*, 68 Md. 259. If under the law she was entitled to notice before her right to administer could be displaced by a stranger, then there was error in making the appointment of Mr. Williams without giving her notice. Now, was she entitled to notice ? If not, had the Orphans' Court discretionary power to appoint the appellant ?

Section thirty-three of Art. 93 of the Code provides that : " It shall not be necessary to give notice to a party entitled to administration if he be out of the State, nor shall it be necessary to summon or notify collateral relations more remote than brothers and sisters of the intestate, in order to exclude them from the administration ; and no relations, except a widow, child, grandchild, father, brother, sister or mother shall be considered as entitled, unless they shall apply for the same." Mrs. Addison is a collateral relation more remote than a brother or sister—she is a niece of the decedent—and there was consequently, under the definite terms of the statute, no obligation to give her notice before proceeding to appoint an administrator after her mother had renounced. The failure of the Orphans' Court to give her notice was not a failure to do something which ought to have been done. But the section goes farther. A niece and a nephew though entitled under *sec. 22* upon the contingency therein named, are under *sec. 23* only entitled to administer provided they shall *apply* for letters. There is no duty imposed on the Orphans' Court to keep the estate open and *wait* for an application. As heretofore indicated the twenty day provision was not designed to cover such a condition, or to apply to any other contingency than a *supposed*, as contradistinguished from a *known* intestacy. No notice to the niece being necessary, and she being entitled to administer only if she applied for letters, and as she in fact made no application until after the Orphans' Court had actually appointed the appellant, the question recurs, had the Court the power to select a stranger ? This inquiry is answered by *sec. 31, Art. 93 of the Codc.*

The section just alluded to enacts that : " If there shall be

neither husband nor wife, nor child, nor grandchild, nor father, nor brother, nor sister, nor mother, or if these be incapable, or *decline* or refuse to appear on proper summons or notice, *or if other relations* and creditors *shall neglect to apply*, administration may be granted at the discretion of the Court." The sister, Mrs. Wyatt, having declined to administer, and her daughter, the niece, having neglected to apply, and this being a case of conceded and not "*supposed*" intestacy, there was no occasion either to wait the twenty days named in *sec. 16*, or to give notice to collateral relations, and the Orphans' Court had undoubted power to grant letters of administration at its discretion. There was, therefore, no irregularity or impropriety in the appointment of the appellant.

There can be no doubt of the authority of the Orphans' Court upon proper averments made in a proceeding inaugurated in due season, to vacate an order appointing an administrator. But no such case is now before us.

We come next to the motion to dismiss the appeal. There are two reasons assigned. One is that the appellant has no interest in the subject-matter of the order appealed from. The other is that the testimony taken below has not been incorporated in the record. Neither of these reasons furnishes a ground for dismissing the appeal. The appellant—the removed administrator—has a direct interest in the subject-matter. His removal, if upheld, would deprive him of his commissions. An appeal lies from an order revoking letters of administration. *Jones* v. *Jones*, 41 Md. 354. The absence of the testimony cannot affect the questions involved. The order appointing Mr. Williams was revoked, not because of any fact sustained by the evidence adduced, but upon the theory that the Court had acted improvidently in granting the letters. We should have had no occasion to consult the evidence even had it been incorporated in the record.

From what we have said it follows that there was error in revoking the letters issued to the appellant; and there was error in this, because the Orphans' Court did not act prematurely, im-

providently or improperly in granting them.    The order ap-
pealed from must therefore be reversed.

> *Order reversed with costs and cause*
> *remanded.*

(Decided February 21st, 1901).